UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICHARD M. ZELMA**<br><br>      **Plaintiff,**<br><br>v.<br><br>**AUDINA HEARING INSTRUMENTS, INC.,** *et al.*<br><br>      **Defendants.** | Civ. No. 18-14655 (KM) (ESK)<br><br>Opinion |

### KEVIN MCNULTY, U.S.D.J.

On July 20, 2018, *pro se* Plaintiff Richard M. Zelma initiated an action in the Superior Court of New Jersey, Bergen County, Law Division against Defendants Audina Hearing Instruments, Inc. ("Audina"); Hear Better For Life a/k/a/ Hearing Better For Life, L.L.C. ("Better For Life"); John Monaco; Sarah R. Love Trauring, Yisroel Sruly a/k/a Isroel Max ("Max"); and Maxsip Telecom Corp ("Maxsip"). (collectively "Defendants"). Plaintiff alleged injuries as a result of unsolicited marketing calls made by Defendants, individually or in concert, in violation of, *inter alia*, the Telephone Consumer Privacy Act ("TCPA"), 47 U.S.C. § 227, and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-130, *et seq.* (Am. Compl. ¶¶1, 19, 30). [1]

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

    "DE" = Docket entry number in this case.

    "Am. Compl." = Plaintiff's Amended Complaint (DE 1-1 at 5-34)

    "P2AA" = Plaintiff's Proposed Second Amended Answer (DE 79, Exhibit A)

The Amended Complaint alleges, *inter alia*, the following. "Audina contracts with one or more third party vendors," including Better For Life, "to knowingly make telemarketing calls" to market its products and services. (Am. Compl. ¶50). Those vendors use automatic telephone dialing systems and/or prerecorded messages to contact potential customers without consent. (*Id.* at ¶¶50-51). Maxsip and its owner, Max, profit from Audina's scheme by leasing telephone numbers to Defendant Better For Life. (*Id.* at ¶¶54, 58).

The Amended Complaint further alleged that Defendants repeatedly made telemarketing calls to Plaintiff, without his consent, and did so while concealing their true telephone number. (*Id.* at ¶¶65-66). Plaintiff alleges that Defendants "knowingly or willfully hid, blocked or deprogrammed [their] real phone numbers . . . to purposefully hide their true identity and that of their call-centers, thereby making it difficult, if not impossible[,] for Plaintiff or others to effectively stop their calls." (*Id.* at ¶78).

On October 4, 2018, Defendants removed this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332 and 1441. (DE 1). On January 26, 2019, Defendants filed a collective Answer (DE 13) to Plaintiff's Amended Complaint. Almost a year later, on January 29, 2020, Defendants Max and Maxsip (collectively "Max Defendants") filed an Amended Answer (DE 52) in which they asserted cross claims for indemnification against Defendants Better For Life, Monaco, and Trauring (DE 52 at 12-13). Defendant Monaco also filed an Amended Answer (DE 61) on November 24, 2020. The Max Defendants and Defendant Monaco thereafter submitted a stipulation of dismissal with prejudice as to the Max Defendants' cross claims against Monaco, which I so-ordered on March 24, 2021. (DE 81).

Thereafter, the Court so-ordered Plaintiff's voluntarily dismissal with prejudice of her claims against most Defendants in this matter. (DE 74 (dismissing claims against Defendant Trauring); (DE 84 (dismissing claims against Defendants Audina, Monaco, and Better for Life).

Now before the Court are Plaintiff's pending motion (DE78) to voluntarily dismiss the sole remaining defendants (i.e., the Max Defendants) from his Amended Complaint and the cross-motion (DE 79) of the Max Defendants for leave to amend their first Amended Answer to assert counterclaims against Plaintiff for malicious abuse of process and malicious use of process. For the reasons provided herein, I will grant Plaintiff's motion (DE 78) and deny the Max Defendants' cross-motion (DE 79). The net result is that all claims against all parties will be dismissed, and the action terminated.

I. **Discussion**
   a. **Plaintiff's Motion to Dismiss**
      i. **Legal Standard**

Federal Rule of Civil Procedure 41 governs voluntary dismissals of civil actions. Where, as here, the opposing party has already filed an answer to the complaint an action may only be dismissed with leave of the court. *See* Fed. R. Civ. P. 41(a)(2). "Whether to grant or deny a motion for voluntary dismissal is 'within the sound discretion of the district court.'" *Bringa v. Roque*, No. 2:13-3296, 2015 WL 857884, at *2 (D.N.J. Feb. 27, 2015) (citing *Hayden v. Westfield Ins. Co.*, No. 12-0390, 2013 WL 5781121, at *2 (W.D. Pa. Oct. 25, 2013)). Generally, a Rule 41 motion should be granted unless the "defendant will suffer some prejudice other than the mere prospect of a second lawsuit." *Emmanouil v. Mita Mgmt., LLC*, No. 11-5575, 2015 WL 5023049, at *2 (D.N.J. Aug. 24, 2015).

In determining whether a voluntary dismissal will result in prejudice to the defendant, courts look to a variety of factors, including "(1) the expense of a potential second litigation; (2) the effort and expense incurred by defendant in preparation for trial in the present case; (3) the extent to which the case has progressed; and (4) plaintiff's diligence in bringing the motion to voluntarily dismiss." *Id.* (citing *Shamrock Creek, LLC v. Borough of Paramus*, No. 12-2716, 2015 WL 3902307, at *2 (D.N.J. June 23, 2015)). Here, I find factors one

through three support dismissal, and are sufficient to justify granting the motion.

### ii. Analysis

The first factor weighs in favor of granting the motion because Plaintiff seeks dismissal with prejudice. (DE 78). Further, Plaintiff submits that the settlement reached with former Defendants Audina and Monaco "satisfied the demand for damages authorized under the TCPA" and contends that "[a]ny damages sought through contribution from Defendant Max and Maxsip . . . would result in overreaching what the statute allows." (DE 78-1 at 4). Therefore, Plaintiff no longer seeks damages against the Max Defendants and, instead, wishes to terminate the action in its entirety. (*Id.*; DE 87).

Because the parties have not engaged in substantial discovery or substantive motion practice beyond the motions currently before the Court, the second factor also supports dismissal. (*See* DE 71 at 2 (joint status report wherein the parties represented that "there has been only limited discovery completed")). Similarly, although the case has been pending for almost three years, it has not progressed beyond limited discovery. (*See id.*). Therefore, factor three supports dismissal as well.

The Max Defendants "agree that dismissal of the Plaintiff's Amended Complaint with prejudice is appropriate." (DE 79-1 at 1). However, those Defendants ask that the dismissal be entered without prejudice to their continued pursuit of Rule 11 sanctions against Plaintiff and the counterclaims contained in their proposed Second Amended Answer. I address the Rule 11 sanctions here, and the motion to amend the answer in the following section.

### iii. Max Defendants' Rule 11 claims

Regarding their Rule 11 claims, the Max Defendants submit that, on January 25, 2021, they served Plaintiff with a Rule 11 letter demanding that the "unsupported claims" in the Amended Complaint be withdrawn. (*Id.* at 2; DE 79-2 at 61-64). In that letter, the Max Defendants submitted that the claims asserted against them "are **neither** supported by existing law or a non-frivolous argument for the extension or modification of existing law" and "have

**no** evidentiary support." (DE 79-2 at 61). The Max Defendants maintained that Plaintiff had no support for its claim that *all* Defendants acted in concert in engaging in improper telemarketing activities because Plaintiff was aware that the Max Defendants "had neither made any of the alleged calls, used an automated device to facilitate the calls, or made direct contact with [Plaintiff]." (*Id.* at 63). The Max Defendants conceded that the Amended Complaint alleged that they leased a phone number to Defendant Better For Life, and alleged that the Max Defendants profited from the overall telemarketing scheme. (*Id.* at 62-63). However, they contended that the Plaintiff was "well aware from [his] experience in telecommunications law that the leasing of a phone number is not a basis for the imposition of liability where the user improperly uses the phone number," absent any evidence that the lessor "participated in any way in the misuse of the phone number" or "engaged in or profited from" the improper actions. (*Id.* at 63). The Max Defendants now submit that, because "Plaintiff failed and refused to withdraw the claims," their right to pursue recovery of Rule 11 attorneys' fees and costs should be preserved as part of the dismissal. (DE 79-1 at 2).

Plaintiff maintains that he never received the Rule 11 letter. (DE 82 at 7-8). In any event, Plaintiff moved to dismiss the Max Defendants from the action one month and one day after the Rule 11 letter is dated. (DE 78). The claims remain only because of the Max Defendants' refusal to take yes for an answer.

Rule 11 requires that any "pleading, written motion, or other paper" filed or submitted to the Court "not be[ ] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corporation*, 677 F. App'x. 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings. *Howe v. Litwark*, 579 F. App'x. 110, 115 (3d Cir. 2014) (quoting *Cooter & Geil v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Should this principle be violated and an appropriate sanction desired, "a motion for sanctions must be made separately from any other motion and must describe

the specific conduct that allegedly violates [the rule]." R. 11(c)(2). After notice is served pursuant to Rule 5, a 21 day period is triggered whereby the party served may withdraw or appropriately correct the challenged paper or claim. *See* Fed. R. Civ. P. 11(c)(2). If after notice and a reasonable opportunity to respond, the court determines that there has been a violation, the court may impose an appropriate sanction on the party that violated the rule. Fed. R. Civ. P. 11(c)(1). However, any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4). Though the party moving for the rule may obtain monetary penalties, the purpose of the rule is not to shift fees. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) ("Rule 11's primary purpose is not wholesale fee shifting but [rather] correction of litigation abuse." (quotation marks omitted)).

"It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x. 174, 185 (3d Cir. 2008) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n. 6 (3d Cir. 2008)). Furthermore, the District Court has substantial discretion to determine the nature and extent of a sanction. *Napier v. Thirty or More Unidentified Fed. Agents, Emps., or Other Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)).

*Pro se* litigants are not shielded from the sanctions offered by Rule 11. *Wong v. Bank of N.Y.*, No. 14-5212, 2016 WL 1597309, at *3 (D.N.J. Apr. 21, 2016) (noting, however, that a court may take into account a pro se plaintiff's status as someone who is "untutored in the law" (citation omitted)). However, *pro se* litigants are given greater leeway in following the technical rules of pleading and procedure. *Metropolitan Life Ins. Co. v. Kalenevitch*, 502 F. App'x.

123, 125 (3d Cir. 2012) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)).

 Monetary sanctions under Rule 11 in the form of attorneys' fees are granted in only exceptional cases. *Ahn v. Korea Advanced Inst. of Sci. & Tech.*, No. 14-1987, 2014 WL 6455593, at *9 (D.N.J. Nov. 17, 2014) (citing *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). In fact, it is only appropriate when it is clear that a claim has absolutely no chance of success on the merits. *Doering*, 857 F.2d at 194 ("[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."); *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 263 (3d Cir. 2011) ("Rule 11, however, is a sanction of last resort."); *Keister v. PPL Corp.*, 318 F.R.D. 247, 256 (M.D. Pa. 2015) ("Rule 11 sanctions should never be viewed as a general fee shifting device. By and large federal courts are bound by the "American Rule," requiring parties shoulder their own legal expenses.") (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)). The overall purpose of a monetary sanction under Rule 11 is thus to deter frivolous litigation and unnecessary motions rather than to compensate the opposing party for the costs of litigation. *See* Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.

 Here, I would not be inclined to impose monetary sanctions in the form of attorneys' fees. This *pro se* Plaintiff moved to voluntarily dismiss the claims against the Max Defendants, concededly not within 21 days, but just one month after the date of the Rule 11 letter. Further, Plaintiff seeks that dismissal with prejudice and concedes that he would not be permitted to seek damages against the Max Defendants. (DE 78-1 at 4). Thus, sanctions are not needed to deter Plaintiff from filing further claims against the Max Defendants. Regardless of whether the claim would have succeeded, it was not wholly frivolous to pursue the Max Defendants on the grounds that they profited from the overall marketing scheme. (Am. Compl. ¶58). Thus, I do not find this

matter to constitute an exceptional case that warrants imposition of monetary sanctions under Rule 11. *See Ahn*, 2014 WL 6455593 at *9.

In light of the foregoing, I will grant Plaintiff's motion (DE 78) to dismiss his claims against Defendants Max and Maxsip with prejudice.

### b. Defendants Max and Maxsip's Cross-Motion
#### i. Proposed Counter Claims

The Max Defendants cross-move for leave to file a Second Amended Answer to include counterclaims against Plaintiff for malicious abuse of process and malicious use of process. (DE 79).[2]

The alleged factual background for the proposed counterclaims is as follows. On June 18, 2018, the Max Defendants received a subpoena from Plaintiff via email. (P2AA ¶5). That subpoena was issued in the state court action *Richard M. Zelma v. CSG Solutions, et.al* ("CSG Action"), prepared by Plaintiff, and "sought information concerning the telephone number 855-888-4327." (*Id.* at ¶¶5, 10). The Max Defendants allege that the subpoena failed to include certain language required by the New Jersey Court Rules. (*Id.* at ¶12). They further allege that "the information requested in the June 18 subpoena had no relevance whatsoever to the claims asserted in the CSG action." (*Id.* at ¶13). Moreover, they allege that Plaintiff was aware when he served the June 18 subpoena "that there was no pending claim in the CSG Action for which Zelma required or was entitled to seek discovery" from the Max Defendants. (*Id.* at ¶15). The CSG action remained uncontested. (*Id.* at ¶17). Nevertheless, following the emailed subpoena, Plaintiff "made several calls to Maxsip demanding that the [Max Defendants] provide the information requested in the subpoena." (*Id.*at ¶18).

---

[2]   I note at the outset the Proposed Second Amended Answer fails to comply with the requirements of Local Rule 15.1(a)(2) because the pleading does not "indicate in what respect(s) it differs from the pleading which it proposes to amend." A litigant, particularly when taking a (*pro se*) adversary to task, would do well to ensure its own strict compliance with the rules.

On July 19, 2018, the Max Defendants received a second subpoena related the current action. (*Id.* at ¶23). However, at that time, Plaintiff had only filed is original complaint in state court and had not yet named the Max Defendants as parties. (*Id.* at ¶¶21-22). In August 2018, the Max Defendants received the Amended Complaint, which added them to the current lawsuit. (*Id.* at ¶24). The Max Defendants submit that, at the time Plaintiff filed his Amended Complaint, Plaintiff had "no proof" that any of the allegedly unlawful telemarketing calls were made to him by the Max Defendants. (*Id.* at ¶29). The Max Defendants then questioned the grounds for their inclusion in the lawsuit and asked Plaintiff "what evidence existed to suggest that they participated in any way in the events that gave rise to the claims." (*Id.* at ¶31). And, when Plaintiff "was asked to provide supporting evidence through discovery, he failed and refused to produce anything that supported his position" and "made unfounded threats of sanctions and ethical violations against the [Mx Defendants] and their counsel." (*Id.* at ¶33).

On December 20, 2020, Plaintiff submitted a letter to the Court stating that he discovered, through online research, that Defendant Maxsip was responsible for the telemarketing calls Plaintiff received and, in particular, that the Max Defendants are "the entity responsible for maintaining toll free number [855] 888 4327 ([855] 888 HEAR), the call-in (sales) number used by Defendant HBFL." (*Id.* at ¶34 (alterations in original)). The Max Defendants submit upon information and belief that, at the time Plaintiff filed the December 20 letter, "there was no basis in fact" for any of those assertions. (*Id.* at ¶35).

On February 25, 2021, the Court conducted a settlement conference that resulted in the settlement of claims between Plaintiff and Defendants Audina and Monaco. (*Id.* at ¶37). The Max Defendants submit that "Plaintiff suggested at that time that he would be prepared to dismiss the claims against the [Max Defendants], but the parties were unable to come to an agreement on the terms of dismissal." (*Id.*) Thereafter, Plaintiff filed the motion (DE 78) to voluntarily dismiss his claims against the Max Defendants. (*Id.* at ¶38).

Based on those allegations, the Max Defendants seek leave to amend their answer to assert two counterclaims: malicious abuse of process (Proposed Count I) and malicious use of process (Proposed Count II).  (*Id.* at ¶¶39-45).

With respect to their malicious abuse of process claim, the Max Defendants assert:

1. Plaintiff's "knowing and intentional use of the court processes to service of the June 18, 2018 Subpoena in the CGS Action in order to secure information for this case was improper, unwarranted and a misuse of process employed in a manner not authorized by law."
2. Plaintiff's "threat of sanctions and the initiation of ethics claims against the [Max Defendants] and their counsel during the pendency of the case was improper, unwarranted and a misuse of process employed in a manner not authorized by law."
3. As a result of that abuse of process, the Max Defendants "sustained damages."

(*Id.* at ¶¶39-41).

Regarding their malicious use of process claim, the Max Defendants assert:

1. Plaintiff commenced the current action against them "without any justification or basis in fact or law."
2. Plaintiff "caused process to issue as against [them] maliciously and without reasonable or probable cause to believe that a meritorious claim existed against them for the violations alleged in the Amended Compliant."
3. Plaintiff's "sole purpose in naming [them] as Defendants was to extract a settlement payment from them, knowing from his vast experience as a plaintiff in similar cases that a business such as Maxsip would likely make a nominal payment to settle the matter."
4. As a result of Plaintiff's malicious abuse of process, the Max Defendants "sustained damages."

(*Id.* at ¶¶42-45).

### ii. Legal Standard

A party is entitled to amend its pleading once as a matter of course within: "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (c), or (i), whichever is earlier." Fed. R. Civ. P. 15(a). After amending once, however, leave of court or written consent of the opposing party is required. *Id.*; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Accordingly, courts "have shown a strong liberality . . . in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous.*, 663 F.2d 419, 425 (3d Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court put its stamp on the liberal amendment policy, while identifying a number of factors relevant to a motion to amend under Rule 15(a):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. at 182.

### iii. Analysis

The Max Defendants assert that amendment should be permitted because (1) Plaintiff has settled the case with their co-defendants and, therefore, the assertion of claims will cause no delay in the completion of the litigation and (2) the Max Defendants may be barred from bringing their malicious prosecution claims if they fail to do so while the case is pending. (DE 79-1 at 3). The Max Defendants do not address any other factor and do not

brief the court on the legal sufficiency of their proposed counterclaims. (*See* DE 79-1).

I agree that, in a sense, permitting the Max Defendants to assert new counterclaims will not delay resolution of the litigation, because there is no longer any litigation to delay. It will, however, at least prolong the litigation. It was only after a successful settlement conference with the codefendants, and after Plaintiff had sought to dismiss the entire action—which the Max Defendants *opposed*—that these Defendants sought to pile on counterclaims.

Regarding the second, timeliness factor, I observe that the Max Defendants had a chance to add their counterclaims when they first amended their answer in October of last year. (DE 52). The counterclaims are based, in part, on a subpoena Plaintiff served back in 2018 (s*ee, e.g.,* PSAA ¶¶5, 39), two years before their first Amended Answer (DE 53). Further, their proposed malicious use of process counterclaim is premised on the Plaintiff's filing of the present action. The Max Defendants were obviously aware of the filing of this action when they filed their Amended Answer. By coming up with these counterclaims when the action was largely settled, they seek to extract the dog-in-the-manger value of obstructing dismissal. They have not attempted to explain why—if the mere filing of this action was so patently outrageous—they failed to include their proposed counterclaims in their prior answer. (*See* DE 79). And they do not seem to acknowledge their first Amended Answer at all. (*See id.*)

While the "mere passage of time 'is an insufficient ground to deny leave to amend,' . . . 'at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.'" *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 188 (3d Cir. 2016) (quoting *Cureton v. NCAA*, 252 F.3d 267, 272-73 (3d Cir. 2001)). Because the Max Defendants were aware of the facts allegedly constituting the basis of their counterclaim when their filed their first Amended Answer, and because they waited until Plaintiff moved to

voluntarily dismiss all claims in this matter, I find that a further amendment to add counterclaims now would unduly burden the court and the Plaintiff, which is more than content to let the matter drop. *See Cureton,* 252 F.3d at ("Delay may become undue when a movant has had previous opportunities to amend a complaint."); *Fahs Rolston Paving Corp. v. Pennington Properties Dev. Corp.*, No. 03-4593, 2009 WL 3681895, at *9 (D.N.J. Nov. 2, 2009) ("[T]here is no reasonable explanation for the Pennington Defendants' failure to assert their proposed breach of fiduciary duty counterclaim in 2005 when they learned of the facts supporting that claim. Given the lack of a reasonable explanation for the delay, the Court finds that the prejudice that would be suffered by Plaintiff if the Pennington Defendants' motion were granted warrants the denial of same.").

Therefore, I decline to grant the Max Defendants leave to further amend their First Amended Answer to include these belated counterclaims.

## II.   Conclusion

For the reasons provided herein, I will grant Plaintiff's motion (DE 78) to dismiss the Max Defendant from his Amended Complaint and will deny the motion (DE 79) of those defendants for leave to file counterclaims. All claims having been dismissed against all defendants, the matter is terminated. The Clerk shall close the file. An appropriate order follows.

Dated: April 20, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**